UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CALVIN RICHARDSON | CIVIL ACTION NO. 09-1649 |
|      LA. DOC #314140 | |
| VS. | SECTION P |
| | |
| | CHIEF JUDGE JAMES |
| | |
| BETTY BLAKE, ET AL. | MAGISTRATE JUDGE HAYES |

<u>REPORT AND RECOMMENDATION</u>

Proceeding *pro se* and *in forma pauperis*, plaintiff Calvin Richardson filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on September 15, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Morehouse Parish Detention Center (MPDC), Collinston, Louisiana, and complains that he was denied appropriate medical care during the month of February 2009 and again in August 2009. Plaintiff sues MPDC Nurse Betty Blake, Warden Brown, Lt. Fife, Cpl. Black, and Sgt. Davenport asking for compensatory and punitive damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

*Background*

Plaintiff arrived at MPDC in October 2006 and his allergy to Tylenol®[1] was noted in his

---

[1] Tylenol or acetaminophen is used to relieve mild to moderate pain from headaches, muscle aches, menstrual periods, colds and sore throats, toothaches, backaches, and reactions to vaccinations (shots), and to reduce fever. Acetaminophen is in a class of medications called analgesics (pain relievers) and antipyretics (fever reducers). It works by changing the way the body senses pain and by cooling the body. <u>Medline Plus, Drugs & Supplements</u>, a Service of the U.S. National Library of Medicine and the National Institutes of Health. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681004.html

medical records.

On February 4, 2009, plaintiff requested medical attention for "sinus pressure build-up" and reminded staff of his allergy to acetaminophen.  Nurse Blake dispensed sinus medication. An hour later she retrieved the medication having noticed in the interim that it contained ingredients similar to those in Tylenol. She indicated that she would provide another medication for plaintiff on February 5, 2009.

On that date plaintiff was provided a 10-day supply of Claritin.[2]  Plaintiff took this medication for 10 days, but, it proved ineffective, and at the end of that time he was still experiencing sinus symptoms.

Plaintiff then requested another sick call on February 17, 2009. He was again examined by Nurse Blake who gave him a medication which she believed would relieve the sinus pressure he was experiencing.  Plaintiff was unable to identify the medication, but he took it nonetheless because of the extreme distress he was feeling and the possibility that he had no other alternatives for relief.  He was released from the medical department and given 10 additional packets of this  unknown medication.  Plaintiff did not take the medication on February 18, nevertheless, on February 19 he began to experience "... intense sinus inflammation..." so he

---

[2] Claritin or loratadine is used to temporarily relieve the symptoms of hay fever (allergy to pollen, dust, or other substances in the air) and other allergies. These symptoms include sneezing, runny nose, and itchy eyes, nose, or throat. Loratadine is also used to treat itching and redness caused by hives. However, loratadine does not prevent hives or other allergic skin reactions. Loratadine is in a class of medications called antihistamines. It works by blocking the action of histamine, a substance in the body that causes allergic symptoms. Loratadine is also available in combination with pseudoephedrine (Sudafed, others). Pseudoephedrine is used to relieve nasal congestion caused by colds, allergies, and hay fever. It is also used to temporarily relieve sinus congestion and pressure. Pseudoephedrine will relieve symptoms but will not treat the cause of the symptoms or speed recovery. Pseudoephedrine is in a class of medications called nasal decongestants. It works by causing narrowing of the blood vessels in the nasal passages. Medline Plus, Drugs & Supplements, a Service of the U.S. National Library of Medicine and the National Institutes of Health.

ingested the contents of one of the packets in an effort to obtain relief.  He took another packet of the medication on February 20.  Thereafter, plaintiff began to believe that the medication was contributing to his "ill-state."

Upon returning from his work detail in a state of extreme fatigue, he somehow discovered that the unknown medication was the same medication containing acetaminophen that had originally been provided on February 4, 2009. Plaintiff demanded to see Nurse Blake; however, she was no longer on the premises. According to plaintiff he began to experience hives, nausea, dizziness, headache, heartburn, itching and inflammation of the sinus.

Plaintiff now believes that he may have sustained serious damage to his liver or other organs and "scratched and scarred tissue upon his body" as a result of having taken the suspect medication.

In any event, on February 25, 2009, plaintiff submitted an Administrative Remedy Procedure grievance. He was interviewed by Warden Brown and Lt. Fife who advised him to refrain from going to work so that he could be examined by a physician on the following day. However, he did not see a physician that day, nor did he see a physician at any time thereafter.

On August 3, 2009, plaintiff complained that he was again experiencing sinus problems and Nurse Blake again provided sinus medication without consulting a physician.

According to plaintiff, "due in part to the prescribing of wrong medication that may or could contribute to monumental health problems, an issue of medical malpractice and negligence arise, furthermore constant and continual patterns of delay and denial to adequate medical attention bring forth a claim of deliberate indifference."

*Law and Analysis*

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to

42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of

process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2

F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be

granted if  it appears that no relief could be granted under any set of facts that could be proven

consistent with the allegations of the complaint. Of course, in making this determination, the

court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given

broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A.

(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a

constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has submitted an articulate pro se complaint which details the factual and legal basis for his claims for relief against the various defendants.  Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his complaint should be dismissed as frivolous and for failing to state a claim for which relief may be granted.

## 2. Medical Care

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994);  *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  In other words, the plaintiff must show "deliberate indifference" on the part of the defendants.  *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59.

Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994);  *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).  Thus, even "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5t Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials '<u>refused</u> to treat [the prisoner], <u>ignored</u> his complaints, <u>intentionally</u> treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

Plaintiff has sued five defendants – (1) Nurse Blake, (2) Warden Brown, (3) Lt. Fife, (4) Cpl. Black, and (5) Sgt. Davenport.  The allegations – accepted as true for the purposes of this analysis – fail to establish deliberate indifference on the part defendants Brown, Fife, Black and Davenport.  Plaintiff has not shown that these defendants or anyone else  "'refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any <u>serious medical needs</u>.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d at 756 (5th Cir.2001).

Fault, if any, has been, for the most part, attributed to Nurse Blake. However, as is shown hereinafter, plaintiff's claims against Nurse Blake fare no better than his claims against the Warden and his corrections staff.

Plaintiff was incarcerated at MPDC without incident for a period in excess of two years before the events of February 2009 occurred.  During the early part of February plaintiff complained of symptoms indicating that he was suffering from the condition commonly known as sinusitis.[3]  Upon his initial complaint and request for relief, he was immediately seen by Nurse Blake who provided an over-the-counter product which she no doubt believed would provide plaintiff with some relief. Plaintiff apparently took one dose of this product and suffered no ill effect. Nevertheless, upon her discovery that the medication contained acetaminophen, Nurse Blake immediately retrieved the medication and provided plaintiff with a 10-day supply of Claritin, an alternative over-the-counter acetaminophen-free product. Unfortunately, this medication proved ineffective and after taking the medication for 10 days, plaintiff's sinusitis symptoms persisted.

When plaintiff complained that the Claritin proved ineffective, Nurse Blake gave plaintiff an immediate dose and a 10 days supply of a medication that plaintiff was unable to identify. Nevertheless, due to the severity of his pain and suffering, and due to the fact that no other alternative therapy was available, plaintiff ingested the unidentified sinus medication. He apparently felt no adverse effects from this medication on February 17, and presumably it proved

---

[3] Sinusitis refers to inflammation of the sinuses that occurs with a viral, bacterial, or fungal infection. Sinusitis can be either acute –  symptoms last 2 - 8 weeks or chronic –  symptoms last much longer. Acute sinusitis is caused by damage to the lining of the sinuses from surgery or infections. Chronic sinusitis may be caused by bacteria or a fungus. Either acetaminophen or ibuprofen are generally recommended to relieve the pain or pressure associated with sinusitis.  Medline Plus, Medical Encyclopedia, a Service of the U.S. National Library of Medicine and the National Institutes of Health.

efficacious because he skipped the prescribed dose for February 18. When his sinusitis flared up

anew on February 19 plaintiff took another dose and then another on February 20. On some

unspecified date after February 20, plaintiff returned from his work assignment feeling fatigued

and then discovered that the medication he was taking contained acetaminophen.[4]

Thus, by his own admission, plaintiff took no more than four doses of this unidentified

acetaminophen-containing sinus medicine – on February 4, February 17, February 19, and

February 20. He reported to adverse effects resulting from the doses taken on February 4 and 17

and only reported ill effects following the ingestion of the does on February 19-20, and, by his

own admission, he was willing to assume the risk of taking this unknown medication in order to

obtain relief from his sinusitis.

Plaintiff acknowledged only that Nurse Blake's errors "may or could contribute" to future

health problems; he also acknowledged that these complained of circumstances arose through

Blake's "... medical malpractice and negligence..."  However, as shown above, negligence – even

gross negligence amounting to malpractice –  cannot support a claim under §1983. Plaintiff's

conclusory allegation of deliberate indifference is unsupported by the facts alleged since he has

not established that Nurse Blake "'refused to treat [him], ignored his complaints, intentionally

treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d at

756 (5th Cir.2001).

Since plaintiff cannot demonstrate deliberate indifference on the part of the named

---

[4] Plaintiff has not explained how he came to believe that this medication contained acetaminophen and he has not otherwise identified the medication.

defendants or any others his medical care claim must be dismissed as frivolous.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint filed pursuant to 42

U.S.C. §1983 be **DISMISSED WITH PREJUDICE** as frivolous.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have fourteen (14) days from service of this report and recommendation

to file specific, written objections with the Clerk of Court. A party may respond to another

party's objections within fourteen (14) days after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within fourteen**

**(14) days following the date of its service, or within the time frame authorized by**

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or**

**the legal conclusions accepted by the District Court, except upon grounds of plain error.**

*See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers at Monroe, Louisiana, December 21, 2009.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE